■ GLENFORD MORRIS, Appellant, v PAVARINI CONSTRUCTION et al., Respondents. [950 NYS2d 370]—

Order, Supreme Court, Bronx County (Mary Ann Brigantti-Hughes, J.), entered on or about February 10, 2011, which granted defendants' motion for summary judgment dismissing plaintiff's Labor Law § 241 (6) claim, predicated on a violation of 12 NYCRR 23-2.2 (a), reversed, on the law, without costs, and upon a search of the record, summary judgment granted to plaintiff.

Plaintiff was working as a carpenter on the construction of a new building in Manhattan when the back wall of a "form" fell on and injured his hand. In this instance, a "form" refers to a

mold used in the fabrication of concrete walls. The form is made of two metal walls with a space between them, into which liquid concrete is poured. Workers remove the form after the concrete hardens.

In an order entered July 2, 2007, the Court of Appeals directed the motion court to hold a hearing to determine if the words of the regulation at issue here, Industrial Code (12 NYCRR) § 23-2.2 (a), "can sensibly be applied to anything but completed forms" (9 NY3d 47, 51 [2007]). This regulation requires that forms used on construction sites "be properly braced or tied together so as to maintain position and shape" (12 NYCRR 23-2.2 [a]).

At the framed issue hearing, the testimony of both plaintiff's and defendants' experts showed that the regulation could sensibly be applied to forms as they are being constructed, before they are ready to have liquid concrete poured into them. Both experts referred to the metal wall that fell on plaintiff as a "form." They concurred on the enormity of the structure, a wall, 30 feet high by 30 feet wide, weighing over 2,500 pounds, that was hoisted by workers into an upright and vertical position. The experts agreed that the form must be braced to withstand wind loads, vibrations and contact by humans and equipment and that a form wall, once hoisted upright, might be left in that vertical stance for days. Most significantly, they both agreed that once upright, the back form wall must be braced to maintain that position.

The operative language of section 23-2.2 (a) is that forms shall be "braced or tied . . . so as to maintain [their] position and shape." The erection of the back form wall is essentially the first step in this process. It defies common sense to think that the form could be structurally safe and maintain its final position and shape, if the back wall that anchors the structure is prone to falling over and collapsing because there is no requirement that it "be properly braced." The experts all agreed that once upright, the back form wall must be braced to maintain that position. Indeed, that the back wall fell on plaintiff indicates that it did not maintain its position and could not have ultimately maintained its shape, making it clear that it was not "properly braced" as required by the regulation. Moreover, it defies logic to limit the Code's directive where the danger posed to workers from these forms is so great, given that they are often hoisted to upright positions without adequate safety bracing and may remain standing for days prior to completion.

Defendants' and the dissent's argument that 12 NYCRR 23-2.2 (a) applies only to completed forms is unavailing. Their in-

terpretation of the expert's testimony at the hearing lacks support in the record.

Moreover, the cases defendants cite in support of this argument are distinguishable. In *Mueller v PSEG Power N.Y., Inc.* (83 AD3d 1274 [2011]), the plaintiff's accident occurred after workers had removed the forms from their vertical position and stacked them for disassembly and storage on the ground at the same elevation as the plaintiff. The plaintiff was injured when a crane cable inadvertently snagged, lifting and then dropping the forms to the ground, where they fell against the plaintiff's leg (83 AD3d at 1274). The *Mueller* court held that 12 NYCRR 23-2.2 (a) did not apply to the forms, where, at the time of the plaintiff's accident, they were in the process of being stored (83 AD3d at 1275-1276). Here, the form wall at issue was not being stored. Rather, workers had set up the back wall in its full upright position to receive concrete. In *McCormick v 257 W. Genesee, LLC* (78 AD3d 1581 [2010]), the plaintiff tripped and fell on a protruding pin workers had stored on a form at the site. Thus, unlike the back wall at issue here, that plaintiff's injury was unrelated to the stability of the structure (*id.* at 1582-1583). Concur—Andrias, Saxe, Moskowitz and Acosta, JJ.

Tom, J.P. dissents in a memorandum as follows:

Tom, J.P. (dissenting). The Court of Appeals remanded this matter to the motion court for a framed issue hearing to determine whether the words of regulation 12 NYCRR 23-2.2 (a) "can sensibly be applied to anything but completed forms" (9 NY3d 47, 51 [2007]). After the hearing, I find that section 23-2.2 (a) applies only to completed forms and has no application in this case where only one wall of a form was erected when it fell on plaintiff.

The provisions of Industrial Code (12 NYCRR) § 23-2.2 are limited in application to completed forms and to ongoing and completed concrete pours. Thus, section 23-2.2 (a) can only be read to apply to fully-assembled concrete forms. Section 23-2.2 is entitled "Concrete work." The provision at issue, subdivision (a), entitled "General requirements," states as follows: "Forms, shores and reshores shall be structurally safe and shall be properly braced or tied together so as to maintain position and shape." As defined in the Guide to Formwork for Concrete (defendant's exhibit A) and by defendant's expert, shores are horizontal supports used to bear the dead load of the form and concrete when a floor is poured, while reshores are used to support the poured floor as it cures—before the concrete acquires its full strength—including any load caused by shores or reshores supporting the floors above. Thus, these terms are not immediately related to the question before us.

The Court of Appeals has already ruled that the phrase "structurally safe" and the term "properly" are too vague to afford a basis for recovery under Labor Law § 241 (6), and while the remainder of 12 NYCRR 23-2.2 (a)—"braced or tied together so as to maintain position and shape"—is suitably specific (9 NY3d at 50), there remains the question of whether that language "can sensibly be applied to anything but completed forms" (*id.* at 51). The issue is whether the requirement for braces or ties "to maintain position and shape" applies to the period during which forms are being assembled (when plaintiff sustained injury) or whether application of this language is limited to the period during which concrete is actually poured and thereafter (when the form is fully assembled).

The regulation indicates the latter interpretation is correct. Industrial Code (12 NYCRR) § 23-2.2 (b), entitled "Inspection," provides: "Designated persons shall continuously inspect the stability of all forms, shores and reshores including all braces and other supports during the placing of concrete. Any unsafe condition shall be remedied immediately." That inspection is required "during the placing of concrete" strongly suggests that the protections provided by subdivisions (a) and (b) of section 23-2.2 are intended to apply to the structural integrity of concrete forms at such time concrete is being poured. Following subdivisions include requirements for the support of newly poured concrete and the stripping of forms. Thus, section 23-2.2 addresses the need to adequately support concrete during and after its placement, and such matters as the manner in which forms are assembled and their support during assembly are not covered.

The expert testimony is consistent with this interpretation. Asked to define the term "form," plaintiff's expert responded: "A form is an assembly of all kinds of components, form panels, wailer [sic] tie[s] and other components, connections, that are put together by the contractor to form the shape of a wall, and make sure that it is—they are safe during the placement of the concrete until the concrete changes it's [sic] strength, increases the strength and changes from being a liquid to solid." An exhibit submitted by defendant, the American Concrete Institute's Guide to Formwork for Concrete, contains a more concise definition: "A temporary structure or mold for the support of concrete while it is setting and gaining sufficient strength to be self-supporting." Defendant's expert also defined the term "tie," stating: "A tie in our particular case is usually a steel rod, about a quarter of an inch diameter . . . that ties together two vertical wall panels and the reason you have a tie is . . . the wet

concrete has a tendency to spread the forms, so they introduce ties to tie the vertical panels together to hold them in place." Here, only one side of the form was erected when the accident occurred. Thus, the application of a tie would be irrelevant under the facts of this case.

That the focus of Industrial Code (12 NYCRR) § 23-2.2 (a) is the structural integrity of the form during the placement of concrete is evident from its language, particularly the provision that the position and shape of the form be maintained by ensuring that it is "braced or tied together." While a requirement to brace a form could be extended to include the support of the single vertical wall panel that fell and injured plaintiff, the alternative to utilize ties to accomplish the same purpose can only be applied to a pair of such panels. Likewise, the requirement to maintain the position of a form could apply to a single vertical panel, but the additional requirement that the shape of the form be maintained clearly anticipates the need to provide sufficient support to withstand the considerable force exerted by wet concrete. Only two panels could provide such support. The testimony of plaintiff's own expert supports this interpretation. Indeed, he explained that ties were placed between the walls of a form "to keep it from blowing out and [to] keep it straight."

The majority attaches undue significance to the experts' opinions concerning the construction of forms. Their testimony was solicited to obtain "the meaning of specialized terms" used in the regulation; the interpretation of the regulation remains a matter of law for the courts (9 NY3d at 51). That an expert may opine that forms should be braced during assembly to resist wind loads has no bearing on whether the regulation at issue requires as much.

Accordingly, the order should be affirmed and the complaint dismissed.